The BURKE COMPANY, Plaintiff,

v.

HILTON DEVELOPMENT COMPANY, Defendant.

Civ.A. No. 90–50205/LAC.

United States District Court, N.D. Florida, Panama City Division.

Sept. 30, 1992.

Alvin L. Peters, Panama City, Fla., for plaintiff.

L. Charles Hilton, Jr., Hilton, Kolk & Penson, Panama City, Fla., Charles V. Choyce, Jr., Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsle, Orlando, Fla., for defendant.

## ORDER

COLLIER, District Judge.

The defendant has moved for dismissal of the plaintiff's complaint for lack of subject matter jurisdiction over this diversity action, or alternatively, for summary judgment based on the common law doctrine of accord and satisfaction (docs. 7 & 8). The plaintiff argues in response that it has met the requisite amount in controversy, and, further, that under Florida law, there has been no accord and satisfaction (doc. 14). Although the Court finds that the plaintiff has satisfied the amount in controversy requirement of 28 U.S.C. § 1332, it, nonetheless, concludes that as a matter of law, there has been an accord and satisfaction, and therefore, summary judgment is appropriate.

## FINDINGS OF FACT

The facts are not complicated. Pursuant to a rental agreement between the parties, the plaintiff supplied the defendant with certain construction equipment for use in the construction of a Holiday Inn Hotel by the defendant in Panama City Beach, Florida. Upon completion of the project, a dispute erupted between the parties based on the plaintiff's assertion that the defendant failed to pay the full rental amount due and that much of the equipment was either damaged or lost. In an apparent effort to resolve the dispute, the parties met to discuss a possible settlement of the claims.

At the time of the settlement discussions, the defendant tendered and the plaintiff accepted and cashed a check for $15,846.05 in satisfaction of all outstanding rental claims. The back of the check read as follows:

By acknowledgement and endorsement of this check the payee acknowledges receipt of the balance of all rent due on the Holiday Inn Job—Panama City Beach—Job 57.

## THE BURKE COMPANY

Approximately thirty (30) days later, an additional check was tendered in the amount of $17,781.18. Similar to the first check, the reverse side of this check read as follows:

By acknowledgement and endorsement of this check the payee acknowledges full and final settlement of all sums owed to the payee by the payor on the Holiday Inn Job 57. THE BURKE COMPANY

The acknowledgement on the back of the second check, however, was crossed-out, with the words, "With Reservation Under Protest" written beneath the alteration.

On June 18, 1990, the plaintiff's representative contacted one of the defendant's representatives by letter and informed him of the plaintiff's intention to strike the restrictive endorsement before cashing the check. The plaintiff's representative then did so and cashed the check. The check cleared the defendant's bank on June 20. Upon learning of this, one of the defen-

dant's representatives sent the plaintiff a letter requesting a return of the $17,781.18. This demand was ignored, and approximately four (4) months later, plaintiff filed suit for the outstanding balance due under the defendant's "Holiday Inn" account.

## CONCLUSIONS OF LAW

### A. *Motion to Dismiss*

■■■■ A motion to dismiss for lack of subject matter jurisdiction based on a plaintiff's failure to satisfy the amount in controversy requirement of 28 U.S.C. § 1332 should not be granted unless the defendant shows "to a legal certainty that the claim is really for less than the jurisdictional amount." *Adolph Coors Co. v. Movement Against Racism*, 777 F.2d 1538, 1544 (11th Cir.1985) (quoting, *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). The amount in controversy requirement is met if the plaintiff has made a "bona fide" allegation that his claim is in excess of $50,000.00. *See St. Paul Mercury*, 303 U.S. at 288–89, 58 S.Ct. at 590. Based on a careful review of the record in the present case, the Court finds that the plaintiff has made a "bona fide" allegation of its claim, and that the defendant has not met his burden under the "legal certainty" standard. The defendant's motion, therefore, is denied.

### B. *Motion for Summary Judgment*

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). An issue of fact is "genuine" if the record as a whole could lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lob-*

*by, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is "material" if it might affect the outcome of the case under the governing law. *Id.*

When considering a motion for summary judgment, the court must view the record and all inferences that can be drawn from it in a light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Moreover, the court must consider the entire record in the case, not just those pieces of evidence which have been singled out for attention by the parties. *See Clinkscales v. Chevron USA, Inc.*, 831 F.2d 1565, 1570 (11th Cir.1987).

■■■■ In the present case, the defendant has raised the defense of accord and satisfaction, claiming that the plaintiff's acceptance and negotiation of its check designated as "full and final settlement of all sums owed to the payee by the payor on the Holiday Inn Job 57" constituted a release by the plaintiff of any rights it may have had under the parties' prior lease agreement. The plaintiff counters by arguing that FLA.STAT. § 671.207 abrogates the common law doctrine of accord and satisfaction and, instead, provides a mechanism whereby a creditor can negotiate a debtor's full payment check and, at the same time, preserve its right to payment under the former agreement.[1]

The dispositive question for consideration by this Court is whether Section 671.207 supersedes the common law doctrine of accord and satisfaction. For the reasons that follow, the Court concludes that it does not, and that the parties' transaction is governed instead by Florida's law of contract which, although inconsistent on this issue, arguably supports a finding of an accord and satisfaction as a matter of law.

For the past several years, courts and commentators alike have struggled over the question of whether Section 1–207 of the Uniform Commercial Code (UCC), as embodied in a particular state's counter-

---

1. Section 671.207 is Florida's counterpart to Section 1–207 of the Uniform Commercial Code. *See Eder v. Yvette B. Gervey Interiors, Inc.*, 407 So.2d 312, 313 (1981).

part to the UCC, permits a creditor to accept and cash a check offered by a debtor as full payment of a disputed claim, while explicitly reserving the right to obtain payment of the remaining balance from the debtor at some later date.[2] This issue has been especially puzzling to Florida courts. *See Eder*, 407 So.2d at 313–14 [does not]; *Miller v. Jung*, 361 So.2d 788 (Fla. 2d DCA1978) [does].[3] Despite the current state of flux, the majority of courts considering the issue of the "full payment" or "conditioned" check have applied the common law doctrine of accord and satisfaction to defeat a creditor's argument under Section 1–207. *Anderson*, 737 P.2d at 419.

Many of the decisions noted above have been of great value to the Court in reaching a decision in this case, as most reflect well-researched and thoughtful analyses of the issue, including commentary and legislative history. However, in making its finding, the Court is most persuaded by an amendment to Article 3 of the UCC which effectively settles the long-standing debate.

In 1990, Article 3, governing negotiable instruments, was revised to include a section devoted entirely to the issue of accord and satisfaction. Entitled Accord and Satisfaction by Use of Instrument, the new section reads in part,

> (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
>
> (b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

U.C.C. § 3–311 (1992).[4]

In conjunction with the revision of Article 3, Section 1–207 was amended to read as follows,

> (1) A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest' or the like are sufficient.
>
> (2) Subsection (1) does not apply to an accord and satisfaction.

U.C.C. § 1–207 (1992). The amendment is explained by language contained in the Official Comment:

> 3. Judicial authority was divided on the issue of whether former Section 1–207 (present subsection (1)) applied to an accord and satisfaction. Typically the cases involved attempts to reach an accord and satisfaction by use of a check tendered in full satisfaction of a claim. Subsection (2) of revised Section 1–207 resolves this conflict by stating that Sec-

---

2. *See, e.g., Anderson v. Rosebrook,* 737 P.2d 417 (*en banc*) (Col.1987); *County Fire Door Corp. v. C.F. Wooding Co.,* 202 Conn. 277, 520 A.2d 1028 (1987); *Marton Remodeling v. Jensen,* 706 P.2d 607 (Utah 1985); *Flambeau Products Corporation v. Honeywell Information Systems, Inc.,* 116 Wis.2d 95, 341 N.W.2d 655 (1984); *Stultz Electric Works v. Marine Hydraulic Engineering Co.,* 484 A.2d 1008 (Me.1984); *Air Van Lines, Inc. v. Buster,* 673 P.2d 774 (Alaska 1983); *Pillow v. Thermogas Co.,* 6 Ark.App. 402, 644 S.W.2d 292 (1982); 6 Corbin, Contracts § 1279 (1962 & Supp.1982); Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code,* 78 Colum.L.Rev. 48 (1978) [holding that it does not]; *Robinson v. Garcia,* 804 S.W.2d 238 (Texas 1991); *AFC Interiors v. DiCello,* 46 Ohio St.3d 1, 544 N.E.2d 869 (1989); *Horn Water-*

*proofing Corp. v. Bushwick Iron & Steel Co.,* 66 N.Y.2d 321, 497 N.Y.S.2d 310, 488 N.E.2d 56 (1985); J. White and R. Summers, Uniform Commercial Code § 13–21 (3d ed. 1988) [holding that it does].

3. The Florida Supreme Court has yet to address the question. This Court, therefore, is left to decide which position is better supported by current authority and sound public policy.

4. Subsection (c) and (d) concern application of section 3–311 to situations where the claimant is a large organization and the person who received the "full-payment" check was without authority to settle the claim. Such circumstances are inapplicable to the facts of the present case.

tion 1–207 does not apply to an accord and satisfaction. Section 3–11 of revised Article 3 governs if an accord and satisfaction is attempted by tender of a negotiable instrument as stated in that section. If Section 3–311 does not apply, the issue of whether an accord and satisfaction has been effected is determined by the law of contract. Whether or not Section 3–311 applies, Section 1–207 has no application to an accord and satisfaction.

Based on the foregoing, there can be no doubt but that Section 1–207, or more appropriately Section 671.207, does not supersede the common law doctrine of accord and satisfaction.

The question then arises as to what law the Court should apply to the facts of this case. There is no authority in Florida to support the proposition that Section 3–311 should apply, as it does not appear that Florida has officially adopted these changes. Therefore, although satisfied that application of Section 3–311 would effectively resolve this case, the Court must decline to apply it and, instead, must follow Florida's law of contract.

■■■■ Florida contract law provides that an accord and satisfaction is a new agreement between two parties, a debtor and creditor, which results when the debtor tenders to the creditor and the creditor accepts and negotiates in full satisfaction and discharge of a prior disputed debt an amount owed to the creditor by the debtor. *Republic Funding Corp. of Florida v. Juarez*, 563 So.2d 145, 146–47 (Fla. 5th DCA1990) (citing, *Jacksonville Electric Authority v. Draper's Egg and Poultry Co.*, 557 So.2d 1357, 1358–59 (Fla.1990)). An elementary principle underlying this doctrine requires that there be a dispute as to the amount originally owed, and that the compromise or settlement be different from that amount. *Jacksonville Electric Authority*, 557 So.2d at 1359. Finally, an accord and satisfaction results as a matter of law when the creditor accepts payment tendered only on the express condition that its receipt is to be considered a full or complete satisfaction of the amount originally

in dispute. *Republic Funding Corp.*, 563 So.2d at 147; *W.C. Murphy Architect v. W.P. Austin Construction Corp.*, 547 So.2d 302, 303 (Fla. 3d DCA1989); *Hannah v. James A. Ryder Corp.*, 380 So.2d 507, 509–10 (Fla. 3d DCA1980).

■■■■ In the instant case, the plaintiff and defendant met on April 10, 1990 in hopes of reaching an agreement on the outstanding balance due under the defendant's account. An agreement was reached on the claim for rental payment, and the plaintiff accepted and negotiated the defendant's check for $15,846.05. The parties do not dispute this fact. Rather, their current disagreement, the subject of this law suit, concerns the amount owed by the defendant for damaged and unreturned equipment. As to this amount, the plaintiff concedes that it was the subject of disagreement at the April meeting, and that it is in fact owed "substantially in excess" of the $17,781.18 offered by the defendant. Thus, the claim was undoubtedly disputed, and the tender offer was different from the amount originally owed under the debt. The Court, therefore, finds that the defendant effected a proper accord.

Regarding the satisfaction, it is clear that when the plaintiff accepted and negotiated the defendant's check, the plaintiff did so with the understanding that it was tendered only on the express condition that it be accepted in full satisfaction of the plaintiff's claim. Of this there can be no question. The plaintiff had participated in settlement discussions over the outstanding billings on the Holiday Inn project approximately two months earlier. More importantly, the plaintiff no doubt was cognizant of the language on the reverse side of the check, as it was conspicuously altered by the plaintiff's representative: This language is unambiguous and clearly notified the plaintiff of the defendant's intent when tendering the check. These facts, together with those noted above, satisfy the Court that there was an accord and satisfaction of the defendant's prior debt as a matter of law. However, a cursory analysis of basic contract law may be helpful in understanding the Court's reasoning.

Contracts are premised on conditions. In the case of an accord and satisfaction, the accord is an offer predicated on the condition that the amount tendered be in full satisfaction of the creditor's claim. *Rhone v. State Auto Mutual Insurance Co.*, 858 F.2d 1507, 1511 (11th Cir.1988) (applying Georgia contract law). The creditor's acceptance of the accord by negotiating the check, thus, is an acceptance of this condition. *Id.* The reasoning behind this principle was well-stated by the court in *Rhone*,

> The reason of this rule is that payment being made upon condition, the acceptance of the payment carries with it the acceptance of the condition.... If he [the creditor] accepts it, he accepts the condition also, notwithstanding any protest he may make to the contrary.

*Id.* at 1511 (quoting, *Hartline–Thomas, Inc. v. H.W. Ivey Construction Co.*, 161 Ga.App. 91, 289 S.E.2d 296, 299 (1982)). Basic contract law, therefore, afforded the plaintiff in this case the option of accepting the check on the defendant's terms or of returning it; thereby, effectively rejecting the condition. *See Marton Remodeling*, 706 P.2d at 609. Failure to do so binds him to the condition as expressed by the language of the check.

The Court is of the opinion that sound public policy also dictates this result. As a matter of independent judicial philosophy, I cannot overlook the injustice which would result from permitting a party to accept another's check on the express condition that it discharge a prior debt, and then later turn around and sue the first party for the remainder due under the original debt. As noted by the court in *Eder*, such a view runs afoul of both logic and sound public policy, as it calls for the elimination of a convenient and valuable tool for resolving disputes informally, without litigation. *Eder*, 407 So.2d at 314; *Flambeau Products Corp.*, 341 N.W.2d at 663.

This unfortunate result has been the subject of concern for several addressing the issue. For example, expressing approval of the common law doctrine in *Flambeau Products Corp.*, the Wisconsin Supreme Court wrote,

> Use of the full payment check by parties bargaining at arm's length is a convenient and valuable way of resolution of dispute through agreement of the parties. The interests of fairness dictate that a creditor who cashes a check offered in full payment should be bound by the terms of the offer. The debtor's intent is known, and allowing the creditor to keep the money disregarding the debtor's conditions seems unfair....

*Flambeau Products Corp.*, 341 N.W.2d at 662–63. Legal commentary is equally supportive:

> It is unfair to the party who writes the check thinking that he will be spending his money only if the whole dispute will be over, to allow the other party, knowing of that reasonable expectation, to weasel around the deal by putting his own markings on the other person's checks.....

*Eder*, 407 So.2d at 313 (quoting, 6A Corbin, Contracts § 1279, p. 293 (2d ed. 1962 & Supp.1980)). In sum, judicial economy is fostered by this "short cut to complete justice." *Flambeau Products Corp.*, 341 N.W.2d at 663 (quoting 6A Corbin, Contracts § 1279, p. 30 (1962)).

There, of course, are arguments to the contrary; however, the Court is unpersuaded. Although the Court is mindful of creditors' rights, it cannot condone a creditor's ignorance of a debtor's sole purpose in extending his money; that is, in satisfaction of an existing dispute between the parties. When a creditor negotiates the tendered check with knowledge of the debtor's intent, whether through discussions, correspondence, or unambiguous language on the check, he is then bound to the agreement and cannot later turn around and sue for the remaining balance due under the former dispute. If a creditor does not assent to the condition, then the proper course of action is to return the check. Simply put, the creditor cannot have his cake and eat it too.

Based on the foregoing, the Court concludes that when the plaintiff accepted and negotiated the defendant's full payment check for $17,781.18, there was an accord

and satisfaction as a matter of law. This finding is supported by the recent amendments to the UCC as well as by numerous court decisions, including several from Florida.

Accordingly, it is ORDERED that,

1. Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

2. Defendant's motion for summary judgment is GRANTED.

ORDERED.